IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| PEGGY FLICK,<br>　　　　　　　　*Plaintiff*,<br>v.<br>WYETH LLC and PFIZER, INC.,<br>　　　　　　　　*Defendants.* | No. 3:12–cv-00007<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Pending before the Court in this product liability lawsuit is Defendants' Motion for Summary Judgment on the Statute of Limitations. (docket no. 48). The Court held a hearing on Defendants' Motion on Friday, May 25, 2012 in Charlottesville, Virginia. For the reasons that follow, Plaintiff's Complaint is untimely, and I will grant Defendants' Motion.

I. BACKGROUND

Plaintiff Peggy Flick, a resident of Palmyra, Virginia, is a 64-year-old woman who, from 1994 to 2001, underwent hormone replacement therapy ("HRT") in an effort to alleviate various menopausal symptoms and improve her cardiac health. Compl. ¶ 4.01. During her treatment period, Plaintiff ingested certain prescription medications: Prempro (manufactured by Defendant Wyeth LLC and its subsidiary Wyeth Pharmaceuticals, Inc. (collectively "Wyeth")), Premarin (also manufactured by Wyeth), and Provera (manufactured by Defendant Pfizer). *Id.* On November 5, 2001, Flick was diagnosed with invasive ductal adenocarcinoma, i.e., breast

cancer.[1] *See* Surgical Pathology Report of Christopher A. Moskaluk, M.D., Ph.D., Defs.' Mem. Ex. 2. In an addendum to Dr. Moskaluk's report, the carcinoma was said to be "positive for estrogen receptor and progesterone receptor." *Id.* at 2. Since her diagnosis, Plaintiff underwent chemotherapy and radiation treatments—apparently successfully—but her condition remains "guarded." Compl. ¶ 4.01.

On July 8, 2004, Plaintiff joined nine other individuals alleging that HRT drugs caused their breast cancer, and filed suit against various pharmaceutical manufacturers (including Wyeth) in the Eastern District of Texas. *See* Defs.' Mem. Ex. 3. Flick is presently before this Court after being dropped from Multi-District Litigation ("MDL") No. 1507, refilling individually in the Eastern District of Texas, and then being transferred here pursuant to 28 U.S.C. § 1404(a). *See* docket nos. 2, 29.

Plaintiff's Complaint sets forth various theories of recovery, including negligence (Count A), negligence per se (Count B), strict liability (Count C), misrepresentation and fraud (Count D), and breach of warranty (Count E). Plaintiff seeks actual damages in excess of $75,000, punitive damages, plus attorneys' fees and costs. For purposes of the instant Motion, Defendants submit that Plaintiff's claims are time-barred because they were filed more than two years after the date she was diagnosed with breast cancer; Defendants therefore seek summary judgment in their favor under Rule 56 of the Federal Rules of Civil Procedure.

---

[1] In her original Complaint, Plaintiff alleges, without explanation, that her cancer was discovered after a lumpectomy on December 4, 2001. As cited above, the surgeon's report clearly indicates that the procedure and subsequent diagnosis occurred nearly a month before that, on November 5, 2001. For purposes of the two-year limitations period in Virginia, however, this discrepancy is irrelevant, since whether the procedure took place in November or December of 2001, the Complaint was filed in July of 2004, more than two years after both dates.

2

## II. APPLICABLE LAW

### A. The Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may cite "depositions, documents, electronically stored information, affidavits or declaration, . . . admissions, . . . or other materials" in support of the movant's assertions. Fed. R. Civ. P. 56(c)(1)(A). Alternatively, a movant may "show[] that the materials cited to not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. Additionally, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### B. Relevant Statutes of Limitations

Because this case was transferred from the Eastern District of Texas under 28 U.S.C. § 1404(a), this Court (the transferee court) must apply the choice-of-law rules from Texas (the state of the transferor court). *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) ("[I]n cases

3

... where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue."); *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 600 (4th Cir. 2004). Looking then to Texas, it has enacted what is commonly referred to as a "borrowing statute," which requires out-of-state plaintiffs like Flick, who seek to bring personal injury actions in Texas, to be timely not only under Texas law, but also under the law of the place where the wrongful act occurred. *See* Tex. Civ. Prac. & Rem. Code Ann, § 71.031(a).

### III. DISCUSSION

I look first to Virginia law, and because I find that Plaintiff's Complaint is untimely thereunder, I do not consider whether the Complaint was timely under Texas law, as I would have had to do if Plaintiff had indeed satisfied Virginia's filing requirements. The Virginia Code sets forth a two-year statute of limitations for personal injury claims. Va. Code § 8.01–243(A). The limitations period begins to run when a plaintiff's claim "accrues." *Id.* Importantly, for most claims, the accrual date is "the date the injury is sustained . . . and not when the resulting damage is discovered." Va. Code § 8.01–230. Actions for fraud, however, do not necessarily accrue on the date of injury, but rather "when such fraud . . . is discovered or by the exercise of due diligence reasonably should have been discovered." Va. Code § 8.01–249(1). The burden of proof to establish facts necessary to prevail on a statute of limitations defense rests with Defendants. *Lo v. Burke*, 455 S.E.2d 9, 12 (Va. 1995).[2]

---

[2] As I mention later, however, this burden shifts to the Plaintiff when she seeks to invoke certain tolling doctrines.

4

Arguing that Plaintiff's injury occurred no later than November 5, 2001, the day she was diagnosed with breast cancer,[3] Defendants submit that Plaintiff's non-fraud claims, i.e., her claims alleging negligence, negligence per se, strict liability, and breach of warranty (Counts A, B, C, and E), are all time-barred because the original Complaint was filed on July 8, 2004. *See* Defs.' Mem. Ex. 3. In *Torkie-Tork v. Wyeth*, 739 F. Supp. 2d 887, 890–91 (E.D. Va. 2010), an HRT personal injury case similar to the one at the bar, a Virginia resident plaintiff alleged that Prempro caused her breast cancer, but presiding Judge T.S. Ellis, III explained that § 8.01-243(A)'s two-year limitations period governed plaintiff's negligence, product liability, and breach of warranty claims. Judge Ellis also found that the plaintiff's date of accrual, for purposes of these claims, was no later than her date of diagnosis. *Id.* at 890–91[4] ([A]bsent tolling, plaintiff's suit is time-barred if the onset of her breast cancer occurred more than two years prior to the . . . filing date.").

Like in *Torkie-Tork*, it is clear that Plaintiff's claims for negligence, negligence per se, strict liability, and breach of warranty are all time-barred, unless some tolling doctrine operates. Additionally, Defendants argue that Plaintiff's fraud claim (Count D) is time-barred because, although fraud claims accrue only when the alleged misconduct "is discovered or by the exercise of due diligence reasonably should have been discovered," Va. Code § 8.01–249(1), Plaintiff's date of diagnosis is when a reasonable person exercising due diligence would have known of the

---

[3] Defendants submit that Plaintiff's injury occurred "no later than" the date of her cancer diagnosis because Plaintiff obviously had cancer before that date. *See Wade v. Danek Med., Inc.*, 182 F.3d 281, 285 (4th Cir. 1999).

[4] In *Torkie-Tork*, the court tolled the limitations period pursuant to Virginia Code Section 8.01-229(E)(1) during the pendency of a putative class action of hormone therapy users in the Northern District of Illinois. Defendants argue that such tolling cannot apply in this case, however, after the Supreme Court of Virginia handed down its ruling in *Casey v. Merck & Co.*, --- S.E.2d ---, 2012 WL 686987, at *4 (Va. Mar. 2, 2012). In *Casey*, the Virginia Supreme Court held that Section 8.01–229(E)(1) did not codify the cross-jurisdictional tolling doctrine, which, when applicable, tolls the statute of limitations of unnamed class members' claims based on the pendency of a putative class action. I discuss this issue in more detail in Part III.B., *infra*.

5

basis of her claim, and Plaintiff filed more than two years after that date. Defendants offer several reasons in support of their position. First, Plaintiff's surgeon instructed her to stop using hormones, consistent with the contraindication in the product labeling for women with breast cancer. Defs.' Mem. 12; Flick Dep. at 138:12–22. Second, the drugs' package inserts warn of potential adverse effects, including breast cancer, and therefore placed Plaintiff on notice of the very risk that eventually materialized. Defs.' Mem. 12–13. Finally, the popular press had publicized the relationship between hormone therapy and breast cancer long before November of 2001, such that, according to Defendants, a reasonably diligent plaintiff undergoing HRT who subsequently developed breast cancer should have discovered the alleged fraud by the time she was diagnosed. Defs.' Mem. 14. To Defendants, these three facts make it clear that a plaintiff exercising due diligence and seeking to file a timely complaint under Virginia law would have done so by November 5, 2003.

Plaintiff responds to all of the foregoing by arguing that the relevant limitations period on her non-fraud claims was tolled either because Defendants fraudulently concealed the existence of a cause of action, *see Newman v. Walker*, 618 S.E.2d 336, 339–40 (Va. 2005) or because the class action tolling doctrine announced in *American Pipe Construction Co. v. Utah*, 414 U.S. 538, 552 (1974) applies to this case. With respect to the fraud alleged in Count D, a claim for fraud in Virginia is subject to a "discovery rule," such that it only accrues when the alleged misconduct is discovered, or by the exercise of due diligence, reasonably should have been discovered. Plaintiff thus argues that her fraud cause of action accrued contemporaneously with—but not until—the publication of the influential Women's Health Initiative ("WHI") Study, which was released on July 9, 2002—just under two years before Plaintiff's fraud action was filed on July 8, 2004. I consider each of Plaintiff's three tolling arguments in turn.

6

## A. Tolling for Defendants' Alleged Obstruction or Fraudulent Concealment

"When the filing of an action is obstructed by a defendant's . . . using any . . . direct or indirect means *to obstruct the filing of an action*, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought." Va. Code § 8.01–229(D) (emphasis added). This sort of "[f]raudulent concealment . . . . must consist of affirmative acts of misrepresentation . . . ." *Newman*, 618 S.E.2d at 339–40 (internal quotation marks omitted). Additionally, such conduct "must be of that character which involves moral turpitude, and must have the effect of debarring or deterring the plaintiff from his action," *id.* at 340 (citation and internal quotation marks omitted), and further must be "designed or intended, directly or indirectly, to obstruct" a plaintiff's filing of this action, *id.* (quoting *Grimes v. Suzukawa*, 551 S.E.2d 644, 646 (Va. 2001)). A plaintiff seeking to rely on § 8.01–229(D) has the burden of establishing these requirements. *See id.* at 339 (citing *Grimes*, 551 S.E.2d at 646).

In support of her first tolling argument, Plaintiff offers sixteen examples of Wyeth's allegedly obstructive conduct, including training sales representatives to downplay risks to doctors; attempting to conceal study data about risks; taking steps to undermine third party studies of the risks associated with these drugs; distracting attention from studies warning of risks; and much more. *See* Pl.'s Resp. 3–13. I will summarize Plaintiff's allegations momentarily.

Plaintiff also cites *In re Prempro Products Liability Litigation: Scroggin v. Wyeth*, 586 F.3d 547, 572–73 (8th Cir. 2009), in which the United States Court of Appeal for the Eighth Circuit endeavored to determine whether defendant Wyeth could be subjected to punitive

7

damages under Arkansas law. The panel held that "there was sufficient evidence upon which a jury could conclude that Wyeth acted with reckless disregard to the risk of injury." *Id.* at 573. Although the Eighth Circuit's decision to send a punitive damages question to the jury due to Defendants' possibly malicious conduct differs from the issue of Defendants' alleged fraud that might toll the limitations period, the arguable similarities between the two inquiries are apparent.[5] Plaintiff thus argues that just as a jury was required to decide whether Defendants' conduct was malicious or reckless with respect to the availability of punitive damages under Arkansas law, Defendants' conduct similarly gives rise to triable issues of fact with respect to whether the limitations period should be tolled for obstruction or concealment under Virginia law.

Defendants claim that Plaintiff is simply trying to re-package her liability theories as evidence of "fraudulent concealment" or "obstruction" in order to toll the limitations period. Defendants also argue that even if Plaintiff's allegations are accepted as true, she did not allege that Defendants acted with the requisite *intent* to obstruct litigation. *See Grimes*, 262 Va. at 332; *Richmond Redevelopment & Hous. Auth. v. Laburnum Constr. Corp.*, 80 S.E.2d 574, 582 (Va. 1954). Additionally, in their Reply brief, Defendants cite opinions from Mississippi and Alabama, interpreting state statutes closely resembling § 8.01–229(D), in which the respective courts declined to find that the acts that allegedly gave rise to the plaintiffs' causes of action

---

[5] As explained in *In re Prempro Products Liability Litigation: Scroggin v. Wyeth*,

> Arkansas law allows for punitive damages when a defendant 'knew or ought to have known . . . that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences from which malice may be inferred.'

585 F.3d 547, 573 (8th Cir. 2009) (quoting Ark. Code. Ann. § 16–55–206). Importantly, the foregoing inquiry focuses on blameworthy conduct that gives rise to a cause of action and leads to the possibility of enhanced damages; unlike the inquiry now before the Court, it has nothing expressly to do with conduct that later *obstructs or deters* a plaintiff's filing of an action.

8

were also sufficient to toll the limitations period. *See Bryant v. Wyeth, Inc.*, 816 F. Supp. 2d 329, 335 (S.D. Miss. 2011) (considering the application of Mississippi's tolling statute and stating that "proof of an affirmative act refers not to proof of the act that gives rise to the claim but rather to a subsequent affirmative act of concealment."); *Scharff v. Wyeth*, No. 2:10-cv-220, 2011 WL 3320501, at *11-15 (M.D. Ala. Aug. 2, 2011) ("[T]his evidence is not probative of any alleged misrepresentation that prevented Mrs. Scharff from making inquiry into the cause of her breast cancer or pursuing any claims arising from it."). Defendants submit that the steps it took to increase and sustain sales of their products do not equate to affirmatively obstructing Plaintiff's filing of an action, and tolling is therefore not appropriate under the law. I agree.

I have carefully reviewed the sixteen examples of purportedly fraudulent or obstructive conduct cited by Plaintiff in her Response. Briefly, Plaintiff's examples include: (1) Wyeth[6] sales representatives emphasizing unproven benefits and downplaying the risk of breast cancer; (2) Wyeth forbidding sales representatives to initiate discussions with doctors about certain drug risks; (3) Wyeth ignoring certain findings from Dr. Malcolm Pike about the subject of menopause therapy and breast cancer and not hiring him to design a study; (4) Wyeth disputing and suppressing Dr. Graham Colditz's study that showed an increased cancer risk from hormone drugs; (5) Wyeth's failure to aide a study by the International Agency for Research on Cancer, and creating a task force to ensure that there would be no public condemnation of the drugs; (6) Wyeth deciding to not "fill the scientific void" when an FDA Advisory Committee reported that there was insufficient data about cancer risks related to hormone therapy; (7) Wyeth ensuring

---

[6] In her Response Brief, Plaintiff indicates that she will sometimes refer to both Defendants, individually or collectively, as just "Wyeth." Pl.'s Br. 1. In each of her examples, Plaintiff thus describes acts allegedly committed only by "Wyeth," but given the aforementioned styling, it seems that Defendant Pfizer might also (or alternatively) have been responsible for some of this alleged conduct. For simplicity's sake, I reiterate Plaintiff's allegations as written, naming only "Wyeth" as the party responsible for each allegation.

9

that an oncologist would not chair a seminar about hormone drugs; (8) Wyeth adhering to its policy to never fund breast cancer studies and not giving Dr. Fiona Gilbert access to its data without significant restrictions; (9) Wyeth's attempts to shift media focus away from a study by Dr. Colditz that described increased cancer risks from HRT; (10) Wyeth organizing a committee to downplay the findings of a 1996 study by a Dr. Cummings; (11) Wyeth reminding its sales representatives to not discuss a 1997 study with physicians; (12) Wyeth funding a Continuing Medical Education program intended to reassure patients and doctors that HRT brought no increased cancer risk; (13) Wyeth failing to follow-up with a German scientist's hypothesis that Wyeth's estrogen drug might be uniquely carcinogenic; (14) Wyeth, in response to two studies published in 2000, advising doctors that the studies were inconclusive and that risks were unproven; (15) Wyeth refusing to follow FDA orders to strengthen the language on its warning label; and (16) Wyeth "ghostwriting" medical articles downplaying HRT risks and thus "pollut[ing] the scientific evidence that doctors relied upon in forming their opinions." See Pl.'s Br. 3–13.

I first observe that several of Plaintiff's examples do not allege any "affirmative act" taken by either Defendant. Specifically, examples 3, 6, 8, and 13[7] all fail to describe affirmative acts contemplated by § 8.01–229(D). Moreover, the Virginia courts that have applied § 8.01–229(D) have clearly distinguished the concept of a passive "concealment" from that of an "affirmative act" designed to "misrepresent." The latter act tolls the running of the statute of

---

[7] To quote, in Example 3, Plaintiff, in relevant parts, alleges that "Wyeth's reaction was *not* to hire Dr. Pike to design a study for them, or to issue a press release," and that "Wyeth . . . *never followed up* on Dr. Pike's concerns . . . ." Pl.'s Br. 5 (emphasis added). In Example 6, Plaintiff alleges that "Wyeth deliberately chose *not to start a study* to fill the scientific void." *Id.* at 6 (emphasis added). In Example 8, Plaintiff alleges that Wyeth *declined to supply* Dr. Gilbert certain data she wanted. *Id.* at 7 (emphasis added). In Example 13, Plaintiff alleges that Wyeth *failed to follow-up on a hypothesis* from Dr. Lippert regarding carcinogenic properties of Wyeth's estrogen drug. *Id.* at 11 (emphasis added).

10

limitations, but the former behavior does not. *Compare Newman* (defendant *misrepresented* his true identity by presenting stolen identification and thus *did* implicate the tolling statute) *with Grimes* (defendant *concealed* his identity by wearing a mask during an assault and thus *did not* implicate the tolling statute). While the cases draw a fine distinction, I find that Plaintiff's examples fail to allege facts necessary to carry her burden to establish that Defendants' activities were committed with moral turpitude or with the intent to obstruct her ability to file her action, and I therefore hold that § 8.01–229(D) does not toll the running of the two-year statute of limitations on Counts A, B, C, and E.

### B. Class Action Tolling

In support of her second tolling argument, Plaintiff submits that the limitations period was tolled under the doctrine announced in *American Pipe Construction Co. v. Utah*, 414 U.S. 538, 552 (1974) ("[T]he commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status."); *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) (extending this doctrine to include individual members of the putative class who had not intervened, such that the statute of limitations is tolled as of the commencement of the suit as to all asserted members of the class who seek to file individuals actions after class status has been resolved).

As Defendants argue in their Reply Brief, Plaintiff is apparently asking the Court to rule against authoritative precedent. In *Wade v. Danek Medical, Inc.*, 182 F.3d 281, 289 (4th Cir. 1999), the United States Court of Appeals for the Fourth Circuit held that a federal court sitting in diversity, as here, must apply the forum state's laws regarding whether *American Pipe* tolling

11

applies. 182 F.3d at 289. And in *Casey v. Merck & Co.*, 722 S.E.2d 842, 845 (Va. 2012), the Supreme Court of Virginia stated that "there is no authority in Virginia jurisprudence for the equitable tolling of a statute of limitations based upon the pendency of a putative class action allegation in another jurisdiction."

In filings with this Court and at the May 25th hearing, counsel for Plaintiff acknowledged Defendants' assertion that the relevant authority has resolved this question against Plaintiff's position, but submitted that the "better rule" is the one applied in *American Pipe*, such that this Court should conclude that the limitations period was tolled even in spite of that authority. I agree with Defendants that Plaintiff "offers no reason or authority why the Court should ignore controlling precedent in favor of another court's rule that the Fourth Circuit has rejected," and I will reject Plaintiff's argument on this point.

### C. Date of Accrual of the Fraud Cause of Action

With respect to Virginia's limitations period for fraud claims, Defendant posits that a reasonable person exercising due diligence could have known of the basis of her claim as of the date of Plaintiff's breast cancer diagnosis, November 5, 2001, and thus Plaintiff's July 8, 2004 filing is time-barred. In support of their position, Defendants submit that in November of 2001, after her breast cancer diagnosis, Plaintiff's physician advised her to stop using the hormones; that this instruction, coupled with the products' packaging inserts and the ample media coverage regarding the dangers of HRT, would alert a reasonable plaintiff of the relationship between breast cancer and the hormone therapy drugs. Defs.' Mem. 12–13. Plaintiff responds by arguing that a reasonable plaintiff would not be aware of the risk until the WHI study—which, according to Plaintiff, made the "causal link between HRT and breast cancer public"—was released on July

12

9, 2002. Plaintiff's position relates closely to her argument, described above, regarding Defendants' various activities designed to conceal the dangers of the drugs and obstruct plaintiffs from filing a claim.

The parties have argued this issue in considerable detail. Each submission now before the Court (Defendants' Memorandum in Support of their Motion for Summary Judgment, Plaintiff's Response, and Defendants' Reply) has hundreds of pages of exhibits associated with it. Many of these exhibits relate to studies, warnings, and other risk indicators that were publicly available at the time of Plaintiff's diagnosis.

Defendants' factual allegations regarding (1) the breast cancer warnings on the HRT drug packaging; (2) the national, state, and local media coverage concerning the association between HRT and breast cancer during that same time, and (3) the instruction by Plaintiff's physician to stop taking HRT drugs after her diagnosis were equally true in *Torkie-Tork*, Judge Ellis found "a genuine material factual dispute with respect to the date on which the alleged fraud was discovered or reasonably should have been discovered," and denied defendant's request for summary judgment on the fraud claim. 739 F. Supp. 2d at 892.

Like the plaintiff in *Torkie-Tork*, Flick's fraud allegation, "distilled to its essence, is that [Defendants] purposely concealed and misrepresented the risks of [HRT drugs] to doctors, consumers, and regulators," and "[t]hus, the fraud would have been discovered no later than the date on which the risks of [HRT] were discovered or reasonably should have been discovered." *Id.* Also, just as the plaintiff in *Torkie-Tork* argued, Flick argues that her fraud claim did not accrue until the publication of the results of the WHI's major study on July 9, 2002. While Judge Ellis denied defendants' motion for summary judgment in *Torkie-Tork* to allow the record

13

to be more thoroughly developed, I find that the instant record is well-developed enough to compel me to grant summary judgment in Defendants' favor.

First, Plaintiff does not dispute that the HRT drugs she ingested contained warnings about breast cancer. True, those warnings did not amount to a statement as grave as "the use of estrogen or progesterone will cause breast cancer" or "if you develop breast cancer while taking estrogen or progesterone, your HRT drugs likely caused or contributed to your illness." But in the case of Prempro, the warning label advised, in relevant parts, that

> [m]ost studies have not shown a higher risk of breast cancer in women who have ever used estrogens. However, some studies have reported that breast cancer developed more often (up to twice the usual rate) in women who used estrogens for long periods of time (especially more than 10 years), or who used high doses for shorter time periods. The effects of added progestin on the risk of breast cancer are unknown. Some studies have reported a somewhat increased risk, even higher than the possible associated with estrogens alone. Others have not. Regular breast examinations by a health professional and monthly self-examination are recommended for all women. Regular mammograms are recommended for all women over 50 years of age.

Defs.' Ex. 11 at 1. The Premarin warning contained very similar wording. *See* Defs.' Ex. 13. The warning goes on to advise patients how to reduce the risks of estrogen/progesterone, and specifically alerts patients to be alert for "[b]reast lumps (possible breast cancer; ask your doctor or health professional to show you how to examine your breasts monthly)." *Id.* at 2. Second, Defendants have supplied over 3,700 instances of national, state, and local news reports regarding the association between HRT and breast cancer. Defs.' Exs. 16–18. Some of these reports include coverage in the media markets surrounding Plaintiff's residence.[8] Finally, after Plaintiff was diagnosed with breast cancer in November of 2001, her surgeon instructed her instructed her to discontinue her HRT use. While perhaps a reasonably diligent plaintiff could

---

[8] Thus, the reasonably diligent HRT patient is not confined to geographic regions that do not include Plaintiff's home.

14

Case 3:12-cv-00007-NKM-BWC   Document 58   Filed 06/06/12   Page 14 of 15   Pageid#: 1123

not be expected to have ascertained the risks of HRT based on any one of these facts standing by itself, they are quite powerful in concert, and I find that the date of accrual, for purposes of Plaintiff's fraud claim, was the date of her diagnosis. Her fraud claim is therefore untimely, and I will grant summary judgment in Defendants' favor.

### D. Texas Law

As I already mentioned, because I find that Plaintiff's Complaint is untimely under the applicable Virginia statutes of limitation, I need not determine whether the claim would also be barred under Texas law.

### IV. CONCLUSION

For the foregoing reasons, I will grant Defendants' Motion for Summary Judgment on the Statute of Limitations in an appropriate Order, to follow.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 6th day of June, 2012.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

15

Case 3:12-cv-00007-NKM-BWC   Document 58   Filed 06/06/12   Page 15 of 15   Pageid#: 1124